# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1583 | **DATE** | 11/1/2002 |
| **CASE TITLE** | MISTI CRULL vs. THE STATE OF ILL JUDICIAL INQUIRY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion And Order. Plaintiff's motion to strike is denied. Defendants' and plaintiff's motions for summary judgment are also denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 0 4 2002 | |
| | Notified counsel by telephone. | | date docketed | 62 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | 02 NOV -3 PM 4:56 | date mailed notice | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MISTI CRULL,

    Plaintiff,

v.

THE STATE OF ILLINOIS JUDICIAL INQUIRY
BOARD, WILLIAM SUNDERMAN, JUSTICE
JOHN W. RAPP, LINDSAY PARKHURST, and
KATHY TWINE (individually and in their
official capacities),

    Defendants.

No. 01 C 1583

Judge John W. Darrah

DOCKETED
NOV 0 4 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff, Misti Crull, filed suit against Defendants, alleging due process violations of the Fourteenth Amendment and 42 U.S.C. § 1983 for alleged property and liberty deprivation following the termination of her employment with the Judicial Inquiry Board. The State of Illinois Judicial Inquiry Board ("JIB") was dismissed with prejudice, and Plaintiff's liberty interest claim was dismissed without prejudice by this Court in August 2001. Plaintiff did not file an amended complaint and has acknowledged in her answers to Defendants' interrogatories that she is "dropping" her liberty interest claim. Accordingly, Plaintiff's due process violation claim is the only remaining claim. Presently before the Court are cross-motions for summary judgment and Plaintiff's Motion to Strike.

Plaintiff seeks to strike several sentences and exhibits of Defendants' Statements of Undisputed Facts. In support of her motion, Plaintiff makes multiple arguments as to multiple

sentences that she believes should be stricken for various reasons, *i.e.*, lack of record support, failure of Defendants to rely on certain documents before their decision to terminate her employment, and immateriality. As all of Plaintiff's oppositions to these statements of fact are also the bases for her denial of certain statements of facts, the Plaintiff's Motion to Strike will not be granted; but Plaintiff's objections and arguments as to those contested statements of fact will be considered in determining whether such statement is a proper statement of undisputed fact pursuant to Local Rule 56.1(a).

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff began her employment with the JIB as an investigator in October 1997. (Plaint.'s 56.1(a)(3) Statement ¶ 1). Plaintiff did not apply for the JIB position through the Department of Central Management Services. Sue Tohinaka ("Tohinaka"), the JIB Executive Director at the time of Plaintiff's hire, sent Plaintiff a letter dated September 30, 1997, informing Plaintiff that she would begin work at the JIB on October 15, 1997. The letter did not discuss conditions under which a JIB employee may be terminated. (Def.'s 56.1(a)(3) Statement ¶ 7).

2

The letter stated Plaintiff's salary and that she had "full State of Illinois Employee Benefits". (Plaint.'s 56.1(a)(3) Statement ¶ 6; Def.'s Ex. 3). Plaintiff was considered a probationary employee for the first six months of her employment. (Plaint.'s 56.1(a)(3) Statement ¶ 5).

Kathy Twine ("Twine") became the Executive Director of the JIB in January 1998. Justice John W. Rapp ("Judge Rapp") served on the JIB beginning in March 1997. William Sunderman ("Sunderman") was appointed to the JIB in 1998, and Lindsay Parkhurst ("Parkhurst") was appointed to the Board in September 1999. Sunderman is the current chairman of the JIB and was chairman when Plaintiff's employment at the JIB was terminated. (Def.'s 56.1(a)(3) Statement ¶ 3).

The JIB is an agency created by the 1970 Illinois Constitution to investigate judges charged with judicial misconduct or being physically or mentally unable to perform their duties. (Def.'s 56.1(a)(3) Statement ¶ 5). The JIB's first meeting was held on October 6, 1971, and was called by Governor Richard Ogilvie. At that initial meeting, the Governor stated that "the Board had been created as an independent agency under the Illinois Constitution and did not regard his office as having any authority with respect to the operations of the Board beyond his power to make the appointment of seven members." (Id., at ¶ 6). Defendants were not aware of the Governor's statement or any document which reflected such statement. (Plaint.'s Additional 56.1(a)(3) Statement ¶ 1).

The JIB does not hire staff pursuant to the statutory requirements of the Illinois Personnel Code. The JIB received legal opinions in 1992 and 1993 from the Attorney General and General Counsel of the Illinois Department of Central Management Services (the agency which administers the Personnel Code). These opinions held that the JIB, as an independent agency

3

created by the Constitution, was not subject to the provisions of the Personnel Code, which governs hiring and firing for certain employees in state agencies under the jurisdiction of the Governor. The JIB formally adopted the Attorney General's opinion in 1993. (Def.'s 56.1(a)(3) Statement ¶ 8). The Defendants were not aware of the Attorney General's opinion at the time of Plaintiff's termination. (Plaint.'s Additional 56.1(a)(3) Statement ¶ 2)

In September 1994, the JIB adopted the following policy:

> Though Board members are not covered by the Personnel Code, the Board adopted a policy, prospective only, for Board employees with respect to accumulated vacation leave. While the Board is not covered by the Personnel Code, it was deemed to be in the best interests of the public to adopt this policy. The policy adopted by the Board is that all Board employees are limited as to the amount of accumulated vacation leave to that amount permitted state employees under the Personnel Code and regulations adopted from time to time thereunder.

(Id., at ¶ 9). In December 1996, Tohinaka distributed to staff a "Policy of Daily Operations" which stated in part, "Although JIB is not covered by the State Personnel Code, the Board has adopted the accumulated vacation leave policy applicable to all State employees." (Id., at ¶ 10). Plaintiff did not receive a copy of the Policy of Daily Operations when she was hired, but she did receive one in July 1999. (Plaint.'s Additional 56.1(a)(3) Statement ¶ 5; Def.'s Response to ¶ 5). Defendants were not aware of this letter prior to Plaintiff's termination. (Plaint.'s Additional 56.1(a)(3) Statement ¶ 3).

In situations where the JIB has no specific policy, it may look for guidance to the personnel rules enacted pursuant to the Personnel Code to determine how to address an issue. (Id., at ¶ 11). The length of JIB employment is not for a set duration. The JIB does not have any formal grievance or discharge procedures that it is obligated to follow. (Id., at ¶ 16).

JIB investigators and other JIB employees have been issued performance evaluations on forms provided by State of Illinois Department of Central Management Services. (Plaint.'s 56.1(a)(3) Statement ¶ 18). While employed at the JIB, Plaintiff received a document regarding her vacation days with the title, "PERSONNEL CODE VACATION DAYS EARNED". (Id., at ¶ 19). Plaintiff observed, on some occasions, that in areas in which the JIB had no policy or procedure, the JIB followed the personnel policies for state employees under the Illinois Personnel Code. (Id., at ¶ 24).

In July 1999, Plaintiff had a question about the JIB's policy concerning sick leave and whether the JIB was bound by "State policy". Twine informed Plaintiff that the JIB was "not subject to State personnel rules". The Illinois Department of Central Management Services informed Plaintiff, in pertinent part, that "you are employed at a small Board that is not under the jurisdiction of the Governor" and "we generally do not give advice regarding matters not within the Governor's jurisdiction...." (Def.'s 56.1(a)(3) Statement ¶ 12). Plaintiff was never a certified employee under the Personnel Code. (Id., at ¶ 13). Central Management Services's documents reflect that JIB employees, including Plaintiff, are considered "exempt" for payroll purposes. (Id., at ¶ 14).

During her employment at the JIB, Plaintiff received praise regarding her performance from the executive director and the members of the JIB. (Plaint.'s 56.1(a)(3) Statement ¶ 8). Plaintiff also received raises and a bonus during her employment at the JIB. (Id., at ¶ 9).

Some employees were placed on probation if their performance needed improvement. (Plaint.'s 56.1(a)(3) Statement ¶ 11). JIB investigator Tom Jennings ("Jennings") was considered a probationary employee at the beginning of his employment. When Jennings

experienced difficulties with his performance, he was placed back on probation, provided with a written explanation of why he was being placed on probation, and given an opportunity to improve his performance prior to his termination. Subsequently, the JIB voted to terminate Jennings' employment; no formal hearing was provided for Jennings. (Plaint.'s 56.1(a)(3) Statement ¶ 12; Def.'s ex. 14). John Valencia was also a probationary employee for the first six months of his employment with the JIB. When he experienced difficulties performing his job, his probation was extended, he was provided with a written explanation of why he was being placed on probation, and he was given an opportunity to improve his performance. (Id., at ¶ 13). Plaintiff and another JIB employee, Wayne McLory, aver that when they were hired, Tohinaka, who is now deceased, informed them that they would be probationary employees for the first six months of employment and that, after that time, they could be fired for cause. (Plaint.'s 56.1(a)(3) Statement ¶¶ 5, 15).

On October 13, 2000, Plaintiff had a meeting with Judge Rapp, Twine, Sunderman, and Parkhurst. At the meeting, Plaintiff was informed that the Board had voted unanimously to terminate her employment immediately. Prior to and at the meeting, Plaintiff was informed that she was an at-will employee. Upon termination, Plaintiff was given two additional weeks' salary. (Def.'s 56.1(a)(3) Statement ¶ 17; Plaint.'s 56.1(a)(3) Statement ¶¶ 2-4).

## ANALYSIS

The Defendants' bases for discharging Plaintiff included the Board's loss of confidence in her investigative abilities and her ability to separate fact from rumor; the Board's belief that several of her self-initiated investigations had no bases and were a waste of the Board's time; and statements by the JIB's outside counsel, Jeffrey Stone, who prosecuted JIB cases before the

Illinois Courts Commission, that he could not use Plaintiff as a witness in cases of problems with her investigative techniques, that she was a "loose cannon", and that he could not trust her as a witness and that he did not have confidence in her ability. (Def.'s 56.1(a)(3) Statement ¶ 18). Prior to this meeting, Plaintiff had not been informed that she was going to be terminated, and she did not have a hearing regarding the termination. (Plaint.'s 56.1(a)(3) Statement ¶¶ 3-4).

Defendants argue that summary judgment in their favor is proper because Plaintiff was an at-will employee; therefore, she did not have a property interest in her continued employment. Plaintiff argues that summary judgment is proper in her favor because she had a property interest under Illinois law and/or pursuant to the JIB's practices and its promises to her.

A property interest in the employment context can arise by an independent source, such as a state law securing such a benefit, or by a clearly implied promise of continued employment. *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir. 1993) (*Heck*). As to the second means of establishing a property interest, "mutually explicit understandings that support [a] claim of entitlement" may give rise to a property interest in employment. *Perry v. Sinderman*, 408 U.S. 593, 601 (1972).

The parties dispute whether Plaintiff has a property interest in her continued employment pursuant to state law under the Illinois Personnel Code. The parties agree that there is no case law regarding the application of the Illinois Personnel Code to the JIB. However, it is not necessary to resolve this issue because genuine issues of material fact exist whether Plaintiff has a property interest in her continued employment based on a clearly implied promise of continued employment. Therefore, summary judgment in favor of Defendants on this claim is not appropriate.

7

Defendants have presented undisputed facts that Plaintiff was informed that she was an at-will employee, that she was provided the Policy of Daily Operations, which stated that JIB employees were not covered by the State Personnel Code, and that she was informed by Twine in 1999 that the JIB was not subject to State personnel rules. These undisputed material facts support Defendants' argument that a clearly implied promise of continued employment did not exist. However, Plaintiff has presented undisputed facts that she and at least one other JIB employee were informed that their employment could only be terminated for cause after the six-month probationary period, that the JIB followed several of the policies and procedures found within the Illinois Personnel Code, and that JIB employees received materials referring to Central Management Services and/or the Illinois Personnel Code. These undisputed material facts support Plaintiff's argument that a clearly implied promise of continued employment did exist. Accordingly, genuine issues of material fact exist whether Plaintiff has a property interest in her continued employment based on a clearly implied promise of continued employment. Therefore, summary judgment for both parties on this claim is not appropriate.

Defendants also argue that summary judgment in their favor is proper because the Defendants have qualified immunity.

A two-step analysis is used to evaluate a claim of qualified immunity. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) (*Jacobs*). It must be determined first whether the plaintiff's claim states a violation of her constitutional rights; second, whether those rights were clearly established at the time the violation occurred. *Jacobs*, 215 F.3d at 766. If the rights were not clearly established, the public official is immune from suit, and the claim is dismissed. *Jacobs*, 215 F.3d at 766.

The plaintiff has the burden of demonstrating that a constitutional right is clearly established. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). A clearly established right is established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Controlling Supreme Court precedent and this circuit's decisions on the issue are reviewed to determine whether a right is clearly established. Absent any controlling precedent, all relevant case law is examined in order to determine "whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by controlling precedent was merely a question of time." *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir. 1989).

Pursuant to Illinois law, as under federal standards, a public employee who cannot be dismissed except for cause has a property interest in their position. *Powell v. Jones*, 56 Ill. 2d 70 (1973); *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1263 (7th Cir. 1985). Absent a controlling state statute, extrinsic evidence of a policy or practice upon which a legitimate expectation of the continuation of a benefit can be based may provide a basis for the property right. *Heck*, 985 F.2d at 310; *Danno v. Peterson*, 421 F. Supp. 950, 953 (N.D. Ill. 1976).

As discussed above, Plaintiff has claimed a violation of her constitutional rights, *i.e.*, a deprivation of a property interest without due process. Therefore, it must be determined if the rights were clearly established at the time of the alleged violation.

There is no controlling Supreme Court precedent, and this circuit has not ruled on the issue of whether a JIB employee has a property interest in his or her position. However, the case law is clear that an employee may have property interest in their employment pursuant to the

Illinois Personnel Code, *see Ryan v. Illinois Dept. of Children & Family Serv.*, 185 F.3d 751, 761 (7th Cir. 1999), or by a clearly implied promise of continued employment, *see Heck*, 985 F.2d at 310.

As stated above, the Court need not determine if the Illinois Personnel Code applies to JIB employees because it has long been established that a property right in employment could arise from the practices and promises of the state employer. *See Heck*, 985 F.2d at 310. And, further, it has been established, for purposes of summary judgment, that Plaintiff had property interest in her continued employment requiring due process before termination. Accordingly, Defendants may not be granted summary judgment based on the doctrine of qualified immunity.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike is denied. Defendants' and Plaintiff's Motions for Summary Judgment are also denied.

Dated: November 01, 2002

JOHN W. DARRAH
United States District Judge